26 F.3d 141
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
JACK L. OLSEN, INC., Appellant,
v.
Mike ESPY, Secretary of the Department of Agriculture, Appellee.
 No. 93-1324.
 United States Court of Appeals, Federal Circuit.
 May 19, 1994.
 
 Before RICH, MAYER, and SCHALL, Circuit Judges.
 RICH, Circuit Judge.
 
 DECISION
 
 1
 Jack L. Olsen, Inc., (JLO), appeals a decision by the Agriculture Board of Contract Appeals, (AGBCA or board), finding entitlement and awarding JLO an equitable adjustment. JLO's appeal is directed to the exclusion of certain costs from the award calculation and the method by which the board calculated the adjustment. We reverse in-part and remand in-part.
 
 DISCUSSION
 
 2
 * JLO appealed to the AGBCA seeking entitlement to an equitable adjustment under Forest Service, U.S. Department of Agriculture, Contract No. 50-56A1-1-00572. The contract involved construction of a 5.5 mile stretch of roadway in the Superior National Forest in Minnesota. JLO was to extract and haul borrow[1] from pits designated by the Forest Service for construction of the roadbed. Prior to bidding the contract, the Forest Service performed an investigation of designated borrow sources. The ensuing report indicated that the borrow sources were not very good and that the contractor would have to be "selective." This report was not provided to the contractors at the time of bidding. JLO's bid was $3.00 per cubic yard ($3.00/cy). JLO relied on Pit # 1 to produce the highest volume (68,383 cy) of borrow, yet he bid Pit # 1 with the lowest profit margin ($.25). JLO attempted to perform the contract over several short and severe seasons, but the designated source pits were inadequate. JLO's request to use the Portage Brook Pit, a non-designated borrow source, to complete performance was denied. JLO ultimately defaulted on the contract. Thereafter, the Contracting Officer rescinded the default, and the contract was reformed whereby it was completed as a joint venture between JLO and another contractor. Note, however, that the contract could not be performed by using borrow from the originally designated sources. Consequently, the Portage Brook Pit had to be designated as the main borrow source to enable completion of the project. Moreover, the modification was made specifically contingent upon the availability of the Portage Brook Pit. The modified contract was "completed with no difficulty and, at the contract price of $3.00/cy...." It should be noted that the Portage Brook Pit was of high quality and quantity as well as being closer to the haul destinations. The total amount of borrow and excavation prior to contract modification was 45,806 cy, and the amount after was 55,209 cy, the total being 101,015 cy.
 
 II
 
 3
 As to entitlement, the board concluded that the failure of the Forest Service to disclose information about the true quality and quantity of borrow in the designated sources, and the subsequent failure of these sources to contain sufficient borrow for performance under the contract, constituted a basis for equitable adjustment.
 
 
 4
 In determining the quantum for equitable adjustment, the board attempted to apply the modified total cost method.[2] The board in fact applied what appears to be a hybrid "jury verdict-modified total cost" method[3] when it modified certain costs[4], thereafter finding 25% of the allowed costs to be the amount of extra work it determined was caused by the deficiencies in the designated borrow sources. (AGBCA No. 87-345-1, p. 12 p 46). Accordingly, the board concluded that JLO was entitled to recover 25% of the allowed costs.
 
 III
 
 5
 This court's jurisdiction over appeals from decisions of boards of contract appeals arises under 28 U.S.C. Sec. 1295(a)(10), and this Court's review of such decisions is limited by the Contracts Disputes Act of 1978. (41 U.S.C. Sec. 607(g)(1). A board decision on an issue of fact will not be set aside unless it "is fraudulent, or arbitrary, or capricious, or so grossly erroneous as to necessarily imply bad faith, or if such decision is not supported by substantial evidence." 41 U.S.C. Sec. 609(b). On questions of law, however, board decisions are neither final nor conclusive, but are freely reviewable." American Elec. Labs., Inc. v. United States, 774 F.2d 1110, 1112 (Fed.Cir.1985).
 
 
 6
 Determination of the appropriate method to be used in calculating an equitable adjustment is a conclusion of law and therefore reviewed de novo by this court. Dawco Constr., Inc. v. United States, 930 F.2d 872 (Fed.Cir.1991). Courts have allowed "jury verdicts" if 1) there was clear proof that the contractor was injured, 2) there was no more reliable method of computing damages, and 3) the evidence was sufficient to make a fair and reasonable approximation of the damages. WRB Corp. v. United States, 183 Ct.Cl. 409, 425 (1968). The jury method is not favored and may be used only when other, more exact methods cannot be applied. Dawco Constr., Inc., 930 F.2d at 880. Furthermore, the jury verdict method is applied less frequently than the total cost method. See Miller Elevator Co. v. United States, 30 Fed.Cl. 662 (1994).
 
 
 7
 The board erred when it applied the jury verdict method without making the appropriate determinations under WRB, supra; moreover, the jury verdict--productivity comparison method[5] is inappropriate here because there never was a normal period of productivity to use as a baseline from which to calculate damages. As JLO argues, the borrow pits were lacking in quality and quantity from the very beginning, and we agree that it is improper to base the damage award on a portion of the difference in production from the first to the second year. The board itself found that the "[E]xtra costs generally began early in the performance and continued until the contract was modified to permit use of the Portage Brook Pit" and that the actions of the government caused the increased costs to occur from the beginning of the contract and continued throughout its duration. (AGBCA No. 87-345-1, p. 20). The jury method is not the most accurate nor the most reliable method. Thus, we conclude that the "jury verdict--productivity comparison method" as applied by the board is inappropriate. Accordingly, the board erred to the extent that it applied the jury verdict method as a basis for determining JLO's award.
 
 
 8
 We determine that the board should have strictly applied the more definitive modified "total cost" method.[6] This method is well suited to situations where it is difficult to determine the nature or amount of added work. Furthermore, where entitlement to an equitable adjustment is so clear, as here, a contractor should be made completely whole. This will ensure that future contractors are willing to bid at the lowest possible price while providing the highest possible quality by preventing bidders from increasing their bid prices to protect against misfortunes resulting from unforeseen developments. This policy, of the government bearing the risk for source related problems, is expressly stated in the contract--"[t]he government assumes responsibility for the quality and quantity of material in the source." (Subsection 30.7 of the General Provisions for Public Works Contracts, FS-6300-42 (12/79)).
 
 
 9
 To recover under the "total cost" theory, JLO must prove the following elements: 1) the nature of the losses make it impossible or highly impracticable to determine them within a reasonable degree of certainty; 2) the appellant's bid was realistic; 3) its actual costs were reasonable; and 4) appellant is not responsible for the added expenses. Servidone Constr. Corp. v. United States, 931 F.2d 860 (Fed.Cir.1991). The "modified" total cost method also takes into consideration bidding and performance inaccuracies. Id. at 861-62.
 
 
 10
 In its attempted application of the "modified total cost" method, the board found that JLO's bid was neither reasonable nor realistic. Specifically, the board concluded that JLO was overly optimistic and failed to include the D6 Dozer and that its actual costs were unreasonable because it included the foreman's salary as a element of borrow excavations. The board found that these costs were not included in JLO's plan for excavation and placement. (AGBCA No. 87-345-1, p. 9, p' § 20, 21).
 
 
 11
 While the board stated that these findings led it to conclude that JLO's bid was unreasonable and unreliable, it went on to state that they were not so egregious as to preclude entitlement and should be used to modify the amount of JLO's recovery. (AGBCA No. 87-345-1, pp. 20, 21). We disagree with the board that the bid should be modified as being unreasonable or unreliable. We agree with the board to the extent that these findings, at most, be considered only when modifying the claim to more closely reflect JLO's total costs.
 
 
 12
 Further regarding the reasonableness of JLO's bid, the uncontested fact that JLO's initial bid of $3.00/cy is identical to the board's finding that the contract was completed with no difficulty at the contract price of $3.00/cy for borrow excavation and placement by using the Portage Brook Pit and Pit # 2 that had since become available is indicative of the reasonableness and reliability of JLO's bid. The board made no other findings relating to bidding inefficiencies that would serve to discount this determination. Therefore, we conclude that there is no substantial evidence to support the board's finding that JLO's bid was unreasonable or unreliable. Accordingly, on remand the board is to apply the modified total cost method to calculate the amount of JLO's award using $3.00/cy as the bid price and exclude from JLO's total costs only those costs as discussed below.
 
 
 13
 A foreman's salary is usually defined in the contract as a direct cost or overhead cost. The board found that the foreman's salary was overhead, and that JLO did not include this item in its bid. (AGBCA No. 87-345-1, p. 9 p 21). There is no evidence in the record to characterize the foreman's salary as either a direct cost or as overhead. It is reasonable, however, for the hours the foreman worked as an operator to be included in the adjustment, at the rate of an operator, if operator's hours were anticipated in the hauling, loading or placing costs as bid. To this end, the board shall make further findings regarding the foreman's salary such that JLO is compensated for the 704 hours the foreman worked as an operator at a rate of $29.93 if the 704 hours were not included elsewhere. Furthermore, we conclude that JLO did not include the D6 Dozer in his bid because it relied on the Forest Service representations which did not indicate that a D6 Dozer was needed.[7] Therefore, the D6 Dozer costs should be included in the total costs.
 
 
 14
 This case is reversed in-part and remanded in-part for the board to conduct further proceedings in accordance with the above discussion.
 
 COSTS OF APPEAL
 
 15
 Cost of appeal to Appellant.
 
 
 
 [1]
 "Borrow" is material that is not available within the road itself and, consequently, must be hauled in by the contractor from an off-site source to build the road
 
 
 [2]
 There are three accepted methods used to determine the quantum for equitable adjustments; they are the actual cost, total cost, and jury verdict methods. In addition, this court has accepted a "modified" total cost method as described in Servidone Const. Corp. v. United States, 931 F.2d 860 (Fed.Cir.1991)
 
 
 [3]
 In referring to the method of apportioning damages, the board states: "Although this conclusion [25%] results in Appellant's recovery not truly being 'total cost,' we believe it is nevertheless appropriate to evaluate the realism of Appellant's bid and the reasonableness of Appellant's incurred costs to establish the final amount of Appellant's recovery." (AGBCA No. 87-345-1, p. 20)
 
 
 [4]
 The board determined the allowable costs by first modifying JLO's direct costs to exclude the costs of a D6 dozer and the foreman's salary
 
 
 [5]
 The jury verdict--productivity method makes a comparison between a "normal" production period and the impacted production period. That difference is usually expressed as a percentage
 
 
 [6]
 The modified total cost method uses the difference in the bid price and the actual costs incurred by the contractor, with modifications for possible errors in bidding, as the amount of equitable adjustment
 
 
 [7]
 The board found that "[B]ecause Pit # 1 was also designated as the crushing site, Appellant believed that the pit must contain good material, i.e., the material would contain gravel with rock not more than 12 inches because this is the maximum size rock that the crusher could handle. (AGBCA No. 87-345-1, p. 8 p 16]. Additionally, the inspection reports refer to large boulders and rocks "that were not shown in the plans" on several reports